UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KIMBERLY ADKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:14-cv-00186-JAW |
| | ) | |
| ATRIA SENIOR LIVING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

Kimberly Adkins was employed by Atria Senior Living (Atria) from April 2011 until she was terminated in March 2012.  In this action, Ms. Adkins asserts gender discrimination in violation of the Maine Human Rights Act and Title VII of the Civil Rights Act of 1964, retaliation in violation of the Maine Human Rights Act and Title VII of the Civil Rights Act of 1964, and slander per se.  Before the Court is Atria's Motion to Dismiss.  After dismissing those counts Ms. Adkins concedes must be dismissed, the Court grants in part and denies in part Atria's motion.

## I.   BACKGROUND

### A.   Procedural History

On April 30, 2014, Kimberly Adkins filed a Complaint in this Court, containing two counts: (1) sex-based discrimination under the Maine Human Rights Act (MHRA), and (2) retaliation under the Maine Human Rights Act.  *Pl.'s Compl. for Hostile Work Environment and Retaliation* (ECF No. 1).  On June 23, 2014, Ms. Adkins filed an Amended Complaint, containing five counts, including the two

original counts and adding (3) discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), (4) retaliation under Title VII, and (5) per se slander. *Pl.'s Am. Compl. for Discrimination and Retaliation* (ECF No. 4). On July 11, 2014, Ms. Adkins filed a Second Amended Complaint. *Pl.'s Second Am. Compl. for Discrimination and Retaliation* (ECF No. 7) (*Am. Compl.*).

On September 30, 2014, Atria Senior Living, Inc. filed a motion to dismiss. *Mot. of Def. Atria Senior Living, Inc. to Dismiss Pl.'s Second Am. Compl.* (ECF No. 13) (*Def.'s Mot.*). Ms. Adkins responded on October 21, 2014. *Pl.'s Mem. of Law In Opp'n to Def.'s Mot. to Dismiss* (ECF No. 14) (*Pl.'s Opp'n*). Atria replied on November 4, 2014. *Def.'s Atria Senior Living Inc.'s Reply to Pl.'s Opp'n to Mot. to Dismiss Second Am. Compl.* (ECF No. 15) (*Def.'s Reply*).

On April 28, 2015, having reviewed the parties' filings, the Court issued an Order requiring the parties to file supplemental memoranda on the statute of limitations issues and ordered oral argument. *Order on Oral Argument* (ECF No. 16). On June 1, 2015, Ms. Adkins filed her supplemental memorandum, *Pl.'s Seriatim Briefing* (ECF No. 18) (*Pl.'s Supp. Mem.*); on June 8, 2015, Atria responded. *Def. Atria Senior Living, Inc.'s Seriatim Br.* (ECF No. 19) (*Def.'s Supp. Mem.*).

On June 15, 2015, the Court held an oral argument in which both parties participated. *Minute Entry* (ECF No. 20). On June 19, 2015, Ms. Adkins filed a second supplemental memorandum. *Pl.'s Supplemental Mem. of Law in Opp'n to Def.'s Mot. to Dismiss* (ECF No. 21) (*Pl.'s Second Supp. Mem.*). On June 26, 2015,

Atria filed its response.  *Def. Atria Senior Living, Inc.'s Resp. to Pl.'s Supplemental Mem. of Law in Opp'n to Def.'s Mot. to Dismiss* (ECF No. 22) (*Def.'s Supp. Resp.*).

### B.     Dismissed Count

In her second supplemental memorandum, Ms. Adkins withdrew her opposition to Atria's motion to dismiss and conceded the dismissal of Count V, the slander per se claim.  *Pl.'s Second Supplemental Mem.* at 2.  In its supplemental response, Atria urged the Court to dismiss Count V.  *Def.'s Supp. Resp.* at 2.  As Ms. Adkins did not object to the dismissal of Count V, the Court dismisses that count.

## II.    THE ALLEGATIONS AND THEORIES OF ACTION IN THE COMPLAINT

### A.     The Factual Allegations

The Court accepts the following facts from the Second Amended Complaint as true for the purposes of this Order:

Beginning in April 2011, Ms. Adkins, a resident of Lebanon, Maine, was a director of culinary services at Atria, an out-of-state corporation that provides assisted living to seniors.  *Am. Compl.* ¶¶ 2, 3, 7.

Ms. Adkins is a lesbian, which her supervisor Jan Peterson discovered a few months after Ms. Adkins stated working at Atria.  *Id.* ¶¶ 8, 9.  After Ms. Adkins discovered that coworkers were circulating rumors about her sexual orientation and that of another coworker of hers, she and the coworker informed Ms. Peterson of the rumors.  *Id.* ¶¶ 11-12.  Ms. Peterson said the situation would be addressed, but it was not.  *Id.* ¶12.  Ms. Adkins and the coworker were told not to have lunch together, were excluded from a team photograph, and were told that they could not stand next to

each other in the holiday picture.  *Id*. ¶¶ 13-15.  Additionally, Ms. Peterson required more hours from Ms. Adkins and changed her role "from an administrative position to a more physically demanding role" despite knowing that Ms. Adkins had a bad ankle.  *Id*. ¶¶ 16-17.  Ms. Peterson told Ms. Adkins she could not schedule an assistant to help her with catering certain events, even though the former director of culinary services, a male, always had an assistant at such events.  *Id*. ¶ 18.

Ms. Adkins also had issues with a male subordinate coworker.  The coworker spoke of her sexual orientation in a derogatory manner, resisted her instructions, was "aggressive toward her", and called her at home while drunk.  *Id*. ¶ 19.  Ms. Peterson told Ms. Adkins that without witness statements "it was her word against his."  *Id*. Ms. Adkins wrote a statement and gave it to Ms. Peterson to give to human resources. *Id*.  Ms. Peterson initially did not submit the statement to HR and only did so when Ms. Adkins followed up and insisted.  *Id*.

In November 2011, the same male coworker "aggressively yelled" at Ms. Adkins in front of other coworkers after she asked him to turn down the radio.  *Id*. ¶ 20.  He "began to yell and hit the pots and pans to make noise."  *Id*.  Ms. Adkins reported the incident to Ms. Peterson, who "did not want to hear about it" and told Ms. Adkins to submit another statement, which she did.  *Id*.  When Ms. Adkins submitted the statement supported by a witness statement, Ms. Peterson "became angry" with Ms. Adkins for requesting a statement from the witness.  *Id*.  Ms. Adkins reminded Ms. Peterson that she had told her that without a witness statement, nothing could be done about an incident; Ms. Peterson became more annoyed.  *Id*.

4

Ms. Peterson also did not allow Ms. Adkins to reprimand the coworker, and told her she had to "play nice in the sandbox." *Id*. ¶ 21. When Ms. Adkins applied for an open position elsewhere in the company, Ms. Peterson told her she would not get the job and "might as well forget about it." *Id*. ¶ 22.

Throughout her employment at Atria, Ms. Adkins felt there was a lack of diversity awareness and training, which she believed "led to discriminatory animus by employees against people of color and gays and lesbians." *Id*. ¶ 23. She reported what she perceived to be discriminatory comments both to Ms. Peterson and to human resources. *Id*. ¶ 24. She also reported to Atria's national human resources specialist her belief that her manager was discriminating against her based on her sexual orientation, and voiced opposition to the discrimination she experienced and others' discriminatory animus toward non-Caucasians. *Id*. ¶ 26.

In November 2011, Ms. Adkins had a conference call with the regional and national human resources representatives regarding Ms. Peterson's comments about her job performance and her belief that she was being penalized for reporting her concerns about discrimination in the workplace and for being a lesbian. *Id*. ¶ 30. On December 8, 2011, she received a verbal reprimand regarding her job performance, and was asked to sign a new job description. *Id*. ¶ 31. In February 2012, Ms. Peterson gave Ms. Adkins two corrective actions and one warning. *Id*. ¶ 32. Ms. Adkins appealed these reprimands; Atria denied the appeals. *Id*. ¶ 33. In another report to human resources, Ms. Adkins objected to Ms. Peterson's characterization of her job performance. *Id*. ¶ 34. In January 2012, Ms. Adkins emailed human resources,

5

explaining that she hoped things would work out, that she was appealing her write-up, and she was considering moving forward with filing the state charge. *Id.* ¶ 35.

On March 7, 2012, Ms. Adkins filed a complaint with the MHRC for discrimination on the basis of sexual orientation and retaliation. *Id.* ¶ 36. On March 8, 2012, Ms. Peterson met with Ms. Adkins to discuss her performance evaluation; she explained that she had low scores. *Id.* ¶ 37. Ms. Adkins told Ms. Peterson about the MHRC complaint. *Id.* On March 12, 2012, Atria terminated Ms. Adkins' employment.

### B.    The Counts

Ms. Adkins' Second Amended Complaint contains four counts.[1] In Count One, Ms. Adkins alleges that "Defendant discriminated against Plaintiff based on her sexual orientation and gender by treating her differently" in violation of the MHRA. *Id.* ¶ 45. In Count Two, Ms. Adkins states that "[d]uring her employment, Plaintiff made complaints or opposed the discrimination against her and Non-Caucasians," and that the Defendant retaliated against her after she complained, all in violation of the MHRA. *Id.* ¶¶ 49, 50. In Count Three, Ms. Adkins says that "Defendant discriminated against [her] based on her gender by treating her differently than male employees", in violation of Title VII. *Id.* ¶ 55. In Count Four, Ms. Adkins alleges that after she complained, Atria retaliated against her, in violation of Title VII. *Id.* ¶ 59.

## III.   THE PARTIES' POSITIONS

### A.    Atria's Motion to Dismiss

---

[1]     The Court dismissed Count Five earlier in this Order.

Atria's motion to dismiss is premised on its assertion that Ms. Adkins' Complaint is either untimely or insufficient to state a claim under both the MHRA and Title VII. *Def.'s Reply* at 1-10. Regarding Count One and Count Two, Atria argues that Ms. Adkins' claims were not timely filed and they should thus be dismissed. *Id*. at 2. It states that the MHRA requires Ms. Adkins to commence her action within the later of either (1) two years of the act of allegedly unlawful discrimination or (2) 90 days after any of the occurrences listed in 5 M.R.S. section 4622(A)-(D). *Id*. at 5 (citing 5 M.R.S. § 4613(2)(C)). Atria contends that Ms. Adkins filed her first Complaint more than two years after she was terminated, the date which Atria argues is the alleged act of unlawful discrimination. *Id*. Additionally, Atria contends that because Ms. Adkins filed her Complaint 92 days after the Maine Human Rights Commission (MHRC) issued its Statement of Finding and dismissed the proceeding, she has failed to satisfy the timeliness requirements of section 4613 and her MHRA claims of discrimination and retaliation must be dismissed. *Id*.

Turning to Count Three, Atria argues that to the extent Ms. Adkins is claiming that she was discriminated against because of her sexual orientation, Title VII does not prohibit such discrimination. *Id*. at 5-6. Next, it contends that once the allegations regarding sexual orientation discrimination are disregarded, Ms. Adkins' Complaint is "left with one conclusory statement" to support her Title VII discrimination claim; namely, that "Defendant discriminated against Plaintiff based on her gender by treating her differently than male employees." *Id*. at 6. This type of "[b]are, conclusory assertion[]" in a complaint, Atria continues, is "precisely the

type of pleading that the Supreme Court found insufficient under [Federal Rule of Civil Procedure] 8(a)(2)." *Id*. Atria concludes that Count Three must likewise be dismissed. *Id*.

Regarding Count Four, Atria points to Ms. Atria's allegation that she complained to human resources that "she felt she was being penalized for reporting her concerns about discrimination in the workplace and for being a lesbian", and argues that it is insufficient to make a claim under Title VII because complaining about sexual orientation discrimination is not opposition to a practice that Title VII forbids. *Id*. at 7-8.

### B.     Kimberly Adkins' Response

In her response, Ms. Adkins asserts that she did not receive her "right to sue letter" from the Equal Opportunity Employment Commission (EEOC), informing her of their adoption of the MHRC's finding, until April 30, 2014. *Pl.'s Opp'n* at 2.  She maintains that she "could not have filed the complaint without the right to sue letter from the EEOC" and argues that fairness demands that the "90 day limit should be tolled until Plaintiff had received a right to sue from both administrative agencies". *Id*. She maintains that her claims under Counts One and Two are timely and should not be dismissed. *Id*.

Regarding Count Three, Ms. Adkins maintains that she alleged additional facts that supported her Title VII claim under theories of sex stereotyping and disparate treatment. *Id*. at 3. She maintains that she was "reprimanded for not 'playing nice'" and "was also not allowed to reprimand a subordinate or follow the

appropriate steps to have the subordinate disciplined" because she was a woman. *Id.* at 4. She also maintains that she provided sufficient evidence of disparate treatment by alleging that she successfully performed her job but was terminated from her position, and that male employees similarly situated were treated differently. *Id.* at 5. She offers additional facts she would allege if granted leave to amend her complaint a third time. *Id.* at 6-7.

In further response, Ms. Adkins disputes Atria's assertion that her complaints to human resources were not protected conduct. *Id.* at 7. She says that she reported "discriminatory behavior" to her supervisor and regional and national human resources representatives at Atria, and contends that "it is clear that she had a reasonable belief that [the unlawful employment practices that Defendant engaged in were] illegal as she went to a regional and national human resources representative about it." *Id.* at 8-10. She also argues that her complaints were not just about sexual orientation discrimination, and that she complained of discrimination based on both sex and race. *Id.* at 10.

### C.    Atria's Reply

Atria asserts that Ms. Adkins could have filed a complaint alleging MHRA violations within the 90-day period without a right to sue letter from the EEOC, and then could have amended her complaint to include Title VII allegations after receiving that letter. *Def.'s Reply* at 1.

In further reply, Atria maintains that Ms. Adkins' allegations, even restated as comprising a gender stereotyping or disparate treatment claim, are still

insufficient to meet Title VII standards. *Id.* at 2-3. Atria argues that being told to "play nice in the sandbox" is not sex stereotyping, and neither is the allegation that a woman is not permitted to discipline an employee and is required to get along with her staff. *Id.* at 2. Atria contends that Ms. Adkins has made no allegations of gender-specific comments, and asserts that the Court should not consider any additional allegations she offers in her response memorandum. *Id.* at 3.

Atria likewise rejects Ms. Adkins' contention that she reasonably believed she was reporting unlawful conduct. *Id.* It argues that courts have "expressly rejected that very argument when the complaint is founded on sexual orientation because 'that belief cannot be considered objectively reasonable.'" *Id.* Of the eight paragraphs in her complaint that Ms. Adkins argues support her claim that she opposed unlawful practices, Atria states that only one alleges "any facts which could possibly create the predicate protected activity for a Title VII retaliation claim." *Id.* at 4. Atria argues that Ms. Adkins' allegation that she reported to human resources "discrimination experienced by her and the discriminatory animus to non-Caucasians", *Am. Compl.* ¶ 26, is insufficient when "read as a whole" to advance a retaliation claim because "it is not plausible that reporting the discriminatory animus [toward] non-Caucasians seemingly months before her termination was [ ] causally related to her termination." *Def.'s Reply* at 4.

### D.   Ms. Adkins' Second Supplemental Memorandum

With respect to Counts I and II, Ms. Adkins changes her position, contending that the timeliness of her state claims is governed by Federal Rule of Civil Procedure

6(e). *Pl.'s Second Supp. Mem*. at 1. She claims that under Rule 6 and "relevant federal case law", a civil rights claimant who receives notice by mail of the need to take action within a proscribed period of time is afforded three extra days beyond to the prescribed time to act. *Id*. at 1-2. She concludes that her case falls squarely within the plain language of Rule 6 and its interpreting caselaw. *Id*. at 2.

### E.   Atria's Supplemental Response

Atria rejects Ms. Adkins' reliance on federal Rule 6, and attacks the caselaw she cites for being "fundamentally different" from the instant case. *Def.'s Supp. Resp*. at 1.

## IV.   DISCUSSION

### A.   Dismissal Standards

Atria's motion to dismiss is based on both a statute of limitations defense and an argument that Ms. Adkins has failed to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In other words, "[i]f a plaintiff's claims do not establish recognized legal theories for which relief may be granted, the court must dismiss the complaint." *Beebe v. Williams College*, 430 F.Supp.2d 18, 20 (D. Mass. 2006). In deciding a motion to dismiss, the Court must "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (internal quotations omitted). If, after such a generous reading, the complaint supports a "reasonable inference that the defendant

is liable for the misconduct alleged," the complaint must survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.    Timeliness of Ms. Adkins' MHRA Claims

Ms. Adkins asserts claims of discrimination and retaliation under the MHRA in Counts One and Two. According to Atria, Ms. Adkins' MHRA claims must be dismissed because they were filed late, albeit by two days. *See Def.'s Mot.* at 5. Atria points out, and the Amended Complaint confirms, that Ms. Adkins alleges acts of discrimination and retaliation that at the latest occurred on March 12, 2012. *Id.* Additionally, the letter from the MHRC to Ms. Adkins, which Atria attached to its Motion to Dismiss, is dated January 28, 2014. *Id.* Attach. 1, *Exhibit A – MHRC Statement of Finding* (ECF No. 13-1) (*MHRC Letter*).

### 1.    The Two-Year Statute of Limitations

The MHRA requires that an action "must be commenced not more than either 2 years after the act of unlawful discrimination complained of or 90 days after any of the occurrences listed under section 4622, subsection 1, paragraphs A to D, whichever is later." 5 M.R.S. § 4613(2)(C). The "occurrence" applicable to this case is the MHRC's dismissal of the case. 5 M.R.S. § 4622(1)(A) ("[T]he plaintiff alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a

complaint with the commission and the commission . . . dismissed the case under section 4612, subsection 2"). Combining these provisions, Ms. Adkins must have commenced her civil action "not more than . . . 90 days after . . . the commission dismissed the case."

Atria contends, and Ms. Adkins does not dispute, that the latest alleged act of discrimination occurred over two years before Ms. Adkins filed her Complaint with this Court. *Def.'s Mot.* at 5 ("Plaintiff filed her first Complaint before this Court on April 30, 2014. Plaintiff was terminated on March 12, 2012. Therefore, Plaintiff did not commence this action within two years of the act of unlawful discrimination"); *Pl.'s Opp'n* at 1-12.[2] Therefore, Ms. Adkins' MHRA claims can only be timely if she satisfied the 90-day requirement.

### 2.    The Ninety-Day Limitations Period

Here, there is no dispute that Ms. Adkins filed her Complaint in this Court just after ninety days from the date of the MHRC decision. The MHRC issued its decision on January 28, 2014 and Ms. Adkins did not file her Complaint in this Court until April 30, 2014. *Pl.'s Opp'n* at 2. Therefore, Ms. Adkins' MHRA claims are barred by the ninety-day statute of limitations unless there is a basis for excusing Ms. Adkins' late filing.

### 3.    The MHRC Action and the EEOC Complaint

---

[2]    Ms. Adkins did not mention the two-year statute of limitations issue in her response, except to say that her Title VII actions were timely brought within the federal two-year statute. *Pl.'s Resp.* at 3. If Ms. Adkins has an argument against Atria's motion to dismiss based on the MHRA's two-year statute of limitations, she has waived it.

In her response, Ms. Adkins explains that she received the MHRC's letter on January 31, 2014, but did not receive the EEOC letter until April 30, 2014.  *Pl.'s Opp'n* at 2.  She asserts that she "could not have filed the complaint without the right to sue letter from the EEOC" and that if she had done so, "Defendant would be arguing that Plaintiff would have forfeited her federal claims under Title VII for not exhausting her administrative remedies." [3]  *Id.*  Atria responds that Ms. Adkins could have filed her initial complaint alleging MHRA claims, and an amended complaint after receiving the EEOC right to sue letter.  *Def.'s Reply* at 1.

Atria is correct.  In *Robards v. Cotton Mill Assocs.*, 1998 ME 157, 713 A.2d 952, the Maine Supreme Judicial Court rejected a similar contention:

> [S]ection 4622 does not require a plaintiff to wait 90 days after the Commission's finding of reasonable grounds before commencing a civil action. . . . The plain language of section 4622 provides that a plaintiff may bring an action as long as the Commission failed, *within* 90 days after its finding that reasonable grounds existed to believe that unlawful discrimination occurred, to enter into a conciliation agreement.  The statutory language does not prohibit a plaintiff from commencing an action before the 90-day period has expired if the Commission, as it did in this case, determines within the 90-day period that conciliation efforts have failed.

*Id.* ¶ 9 (emphasis in original).  Ms. Adkins has pointed to no caselaw that would permit an aggrieved claimant to ignore the state's ninety-day filing requirement simply because she was awaiting a ruling from a federal administrative proceeding involving the same set of facts.  Instead, the *Robards* rule strongly suggests that Ms.

---

[3]     Ms. Adkins initially raised equitable tolling and equitable estoppel arguments in support of her position that her Complaint was timely.  At oral argument, however, she stated that she was no longer proceeding with these arguments because neither doctrine applies to her case.  The Court does not address her tolling or estoppel arguments.

14

Adkins could have and should have filed with this Court within the ninety-day period and amended her Complaint, if necessary, when the federal agency acted. There was no need for Ms. Adkins to watch Maine's ninety-day claim period lapse while awaiting the EEOC decision.

### 4.   Date of Issuance v. Date of Receipt

In her memorandum, Ms. Adkins asserts that the MRHA "does not specify whether the 90-day time period begins to run at the time of the letter of dismissal or the date of the receipt of the letter by the Plaintiff." *Pl.'s Supp. Mem.* at 2. She cites *Richards v. City of Bangor*, 878 F. Supp. 2d 271 (D. Me. 2012), for the proposition that Judge Hornby "did consider the [statute of limitations period] to run when the Plaintiff received the dismissal." *Pl.'s Supp. Mem.* at 2.

To begin, the *Richards* case is not as unequivocal as Ms. Adkins contends. In *Richards*, Judge Hornby summarily affirmed Magistrate Judge Kravchuk who pointed out in her recommended decision that the MHRC issued its decision on May 4, 2011 and "[n]inety days from that occurrence was not August 24, 2011, but August 2, 2011." *Richards*, 878 F. Supp. 2d at 277. The Magistrate Judge went on to observe that "[e]ven allowing a handful of days for receipt of the Notice in the mail, Plaintiff did not file suit until August 25 and missed the August 2 deadline by a wide margin." *Id.* Neither Judge Hornby nor Magistrate Judge Kravchuk decided that the "occurrence" in the MHRA was effective only upon notice. Instead, consistent with the judicial principle that a court should not issue advisory rulings, these judges simply concluded that the plaintiff lost either way. Here, the issue has been squarely

raised because if January 28, 2014, the date of the decision, is the critical date, Ms. Adkins has failed to comply with the ninety-day filing requirement of section 4613(2)(C), but if January 31, 2014, the date of her counsel's receipt of the decision, is the critical date, she has complied with the ninety-day requirement.

The Court concludes that the critical date under the MHRA is not the date of receipt; it is the date of the dismissal. The language of the statute is clear. Subsection (2)(C) of section 4613 states:

> The action must be commenced not more than . . . 90 days after any of the occurrences listed under section 4622, subsection 1, paragraphs A to D . . . .

5 M.R.S. § 4613(2)(C). The triggering points under this statute are the "occurrences", not notice of the occurrences.

Turning to section 4622, the statute lists four such "occurrences": (1) dismissal under section 4612, subsection 2 (which authorizes the MHRC to "dismiss the proceeding" if it does not find reasonable grounds to proceed); (2) failure, within 90 days after finding reasonable grounds, to enter into a conciliation agreement to which the plaintiff was a party; (3) issuance by the MHRC of a right-to-sue letter; or (4) dismissal of the case in error. 5 M.R.S. § 4622(1)(A-D). Each "occurrence" is an event that would require notice to the individual claimant. But there is no suggestion in the statute that the ninety-day period was to run from notice, as opposed to the "occurrence" itself.

The Maine statute differs in this regard significantly from Title VII. Under 42 U.S.C. § 2000e-5(f)(1), the 90-day period for filing a civil action begins "ninety days

16

after the giving of such notice". With this language, federal courts have routinely interpreted the triggering event for the commencement of the ninety-day period to be the date of receipt of the right-to-sue letter. *Noviello v. City of Boston*, 398 F.3d 76, 85 (1st Cir. 2005) ("Once such a letter is received, the claimant must file her suit within ninety days"); *Mukherjee v. Andersen*, No. 12-11381-FDS, 2013 U.S. Dist. LEXIS 73843, at *14-15 (D. Mass. May 24, 2013) ("The litigant has exhausted administrative remedies when she receives a 'right to sue' letter from the agency, after which the litigant has 90 days to file a lawsuit in court").

### 5.    Maine Rule of Civil Procedure 6(c) Does Not Apply

In her supplemental memorandum, Ms. Adkins argues that because Maine Rule of Civil Procedure 6(c) provides that "whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period," the time within which she was required to file suit must have been extended by three days. *Pl.'s Mem.* at 2-3.  First, the argument is premised on the assumption that the triggering date is the date of notice and the Court has concluded that it is the date of the dismissal.  Second, the three-day requirement of Rule 6(c) "concerns the time period in which the recipient of a mailing is required to respond, not the time when a mailing is deemed filed." *Ferris v. Cnty. of Kennebec*, 44 F. Supp. 2d 62, 66 (D. Me. 1999).  *See also Rich v. Lane*, No. Kno-10-298, 2010 Me. Unpub. LEXIS 143 (Me. Supreme Judicial Ct. Dec. 7, 2010); *Scott Dugas Trucking & Excavating v. Homeplace*

*Bldg. & Remodeling*, 651 A.2d 327, 329 (Me. 1994) (Rule 6(c) (then Rule 6(d)) does not apply to Rule 4B(c), which requires that a trustee process be served within 30 days of the date of the order, because the prescribed period in Rule 4B(c) runs from the date of the order, not the date of service); *City of Lewiston v. Maine State Emps.' Union*, 638 A.2d 739, 742 (Me. 1994) ("The three-day extension for mailing provided for in M.R. Civ. P. 6(d) also does not apply, since the Employers were required to file their appeal from the date of issuance, not the date of service"); CHARLES HARVEY, MAINE PRACTICE SERIES § 6.7, n. 4 (3d ed. 2014).

### 6.     Federal Rule of Civil Procedure 6(e) Does Not Apply

In her second supplemental memorandum, Ms. Adkins argues that because Federal Rule of Civil Procedure 6(e) provides that "whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period," the time within which she was required to file suit must have been extended by three days. *Pl.'s Second Supp. Mem.* at 1-2.  In support of her assertion, Ms. Adkins cites the Supreme Court's decision in *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 n. 1 (1984).  Atria rejects Ms. Adkins' reliance on federal Rule 6, and attacks the caselaw she cites for being "fundamentally different" from the instant case.  *Def.'s Supp. Resp.* at 1.

The Court is confused.  First, there is no longer a federal Rule 6(e).  Second, the closest provision under federal Rule 6 does not say what Ms. Adkins says Rule 6

18

says.  *See* FED. R. CIV. P. 6(d) ("When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)").  Moreover, this case does not involve a party required to act after service is made.  Third, *Baldwin County Welcome Center* does not discuss Rule 6.  *See generally Baldwin Cnty. Welcome Ctr.*, 466 U.S. 147.  Fourth, *Baldwin County* is a Title VII case, and the Court has explained how substantially the MHRA and Title VII differ with respect to filing deadlines.  *See* Part IV(B)(4), *supra*.  The Court concludes that neither Federal Rule of Civil Procedure 6 nor *Baldwin County* offers Ms. Adkins any relief.

### 7.    Conclusion:  State Statute of Limitations

Ms. Adkins presents a hard case because she missed the deadline by only two days and she was represented by counsel at the time.  However, once the Court determines that she had not only failed to file on a timely basis but also that the three-day extension under Rule 6 was unavailable to her, the Court is required to apply the law as the Maine legislature enacted it and to conclude that Ms. Adkins has failed to comply with the statute of limitation in the MHRA.  In doing so, the Court has kept in mind that the Maine Supreme Judicial Court's admonition that "[s]tatutes of limitation are statutes of repose and . . . should be construed strictly in favor of the bar [they were] intended to create."  *Harkness v. Fiztgerald*, 1997 ME 207, ¶ 5, 701 A.2d 370, 372.

### C.    The Sufficiency of Ms. Adkins' Title VII Discrimination Pleading

To survive a motion to dismiss, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2).  This short and plain statement need not provide an exhaustive factual account, but must at least "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and alteration omitted).  That is, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy.  *Iqbal*, 556 U.S. at 678.  The Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012).  Legal conclusions couched as facts and "threadbare recitals of the elements of a cause of action" will not suffice.  *Id*.; *see also Ocasio–Hernandez v. Fortuno–Burset*, 640 F.3d 1, 12 (1st Cir. 2011).  Additionally, "the court must determine whether the factual content permits 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Grajales v. Puerto Rico Sports Auth*., 682 F.3d 40, 45 (1st Cir. 2012) (quoting *Morales-Cruz*, 676 F.3d at 224).

Ms. Adkins' Complaint states that Atria discriminated against her "based on her gender by treating her differently than male employees." *Am. Compl.* ¶ 55.  Atria argues that the First Circuit has stated that Title VII does not prohibit sexual orientation discrimination, that Ms. Adkins has tried to "disguise her allegations of sexual orientation discrimination as gender discrimination", and that the only

remaining allegation supporting Ms. Adkins' discrimination claim, that she was treated differently from male employees, is the type of "bare, conclusory assertion[ ]" that has been found insufficient under Federal Rule of Civil Procedure 8(a)(2). *Def.'s Mot.* at 5-6.

Ms. Adkins contends that she stated facts that support her Title VII discrimination claim under theories of both sex stereotyping and disparate treatment. *Pl.'s Opp'n* at 3. In addition to her allegation that Atria treated her differently from male employees, Ms. Adkins argues that her Amended Complaint contains one specific allegation that supports her sex stereotyping claim:[4] her manager told her to "[p]lay nice in the sandbox." *Id.* at 4.

In reply, Atria argues that even if Ms. Adkins' claim is a sex stereotyping claim, as opposed to a sexual orientation discrimination claim, nothing in Ms. Adkins' Complaint makes the sex stereotyping claim plausible. *Def.'s Reply* at 2. Atria asserts that none of the alleged comments are gender-specific. *Id.* This, Atria states, is fatal to Ms. Adkins' claim. *Id.*

Preliminarily, the Court notes that Title VII prohibits sex-based discrimination, *see* 42 U.S.C. § 2000e-2, but "does not proscribe harassment simply because of sexual orientation." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999). Atria contends that Ms. Adkins' sex discrimination claim is merely a sexual orientation claim in different clothing. It cites a First Circuit case,

---

[4]      In her opposition, Ms. Adkins originally pressed that her Amended Complaint contained five allegations that supported her sex stereotyping claim. However, at oral argument, Ms. Adkins conceded that four of those allegations only supported her disparate treatment claim, leaving just one fact supporting her sex stereotyping claim.

*Rosa v. Park West Bank & Trust Co*., for the proposition that "Title VII's prohibition against sex discrimination does not provide recourse to allegations of sexual orientation discrimination." *Def.'s Reply* at 6 (citing *Rosa v. Park West Bank & Trust Co*., 214 F.3d 213 (1st Cir 2000)).

*Rosa*, however, does not support Atria's position.  In that case, the Court credited the district court's conclusion that sexual orientation discrimination is not prohibited but reversed the district court's granting of dismissal, on the grounds that the plaintiff had "alleged that the Bank's actions were taken, in whole or in part, on the basis of the appellant's sex."  *Rosa*, 214 F.3d at 215 (internal quotations omitted). To the extent that Ms. Adkins has alleged facts that support a sex discrimination claim, the Court considers them because Ms. Adkins has alleged that Atria's conduct was at least in part motivated by her gender.  The Court does not consider Ms. Adkins' allegations insofar as they relate to sexual orientation discrimination.

The Court first considers Ms. Adkins' gender stereotyping argument.  The First Circuit has stated that "[a] gender-stereotyping claim arises when an individual suffers an adverse employment action because she either conforms or fails to conform to some stereotype or stereotypes attributable to her gender." *Morales-Cruz*, 676 F.3d at 224-25.  In her Amended Complaint, Ms. Adkins contends was told to "play nice in the sandbox."

This factual allegation, however, is entirely gender-neutral; indeed, it is arguably less gender-oriented than other comments the First Circuit has found to be gender-neutral.  In *Morales-Cruz*, university officials described the plaintiff as

22

"fragile," "immature," "unable to handle complex and sensitive issues", engaged in "twisting the truth" and exhibiting a "lack of judgment". *Id*. at 225.  The First Circuit concluded that the terms were "without exception gender-neutral" and stated that "[b]y definition, terms that convey only gender-neutral meanings are insufficient to anchor a gender-stereotyping claim." *Id*.  Here, Ms. Adkins has alleged facts that are indicative of a poor working relationship with her manager and subordinate, but has not alleged any comments that are gender-tinged, and does not show that Ms. Adkins was treated differently because she was a woman.  Therefore, the Court concludes that, even assuming all of the factual allegations are true, Ms. Adkins has failed to establish that the gender-neutral comments made by her manager were based on perceptions of gender stereotypes.

Next, the Court considers Ms. Adkins' argument that she has pleaded sufficient facts to make out a prima facie case of sex discrimination under a disparate treatment theory.  In support of her claim, she offers the following five allegations:

(1) Her manager told her that she was not allowed to schedule an assistant to help her with catering certain events, even though the former director of culinary services, who was male, always had an assistant help him at these events;

(2) "On occasion[ ]" she was not allowed to discipline subordinates even though the former director of culinary services was allowed to do so;

(3) Her job duties differed from other male directors of culinary services;

(4) She was required to submit witness statements along with her complaints against male coworkers when male supervisors were not required to do so;

(5) She was told to "play nice in the sandbox" when male counterparts were not so instructed.

*Pl.'s Opp'n* at 5-6.  She contends that these facts are sufficient to support a disparate treatment claim.[5]  *Id.*  She does not contest Atria's assertion that Title VII does not prohibit discrimination based on sexual orientation.

A prima facie disparate treatment claim, where direct evidence of discrimination is lacking, requires that Ms. Adkins allege that: (1) she is a member of a protected class, (2) she possessed the necessary qualifications and adequately performed her job, (3) she suffered an adverse employment action, and (4) similarly situated members outside her protected class were treated more favorably.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Berry v. City of South Portland, Maine*, 525 F. Supp. 2d 214, 228 (D. Me. 2007).  Atria does not contest that Ms. Adkins has alleged sufficient facts on any of the four elements.  After reviewing the Complaint, the Court concludes that Ms. Adkins has specifically described instances of disparate treatment, and has provided Atria with sufficient notice of the claims against it.  The Court therefore declines to dismiss Ms. Adkins' Count Three.

---

[5]      Ms. Adkins states that if the Court concludes that the above allegations are insufficient, she proposes six additional allegations she would include in a third amended complaint.  *Pl.'s Supp. Mem.* at 6-7.  In the absence of a motion for leave to file an amended complaint, the Court does not consider these additional allegations.  Regardless, the Court concludes that she has alleged sufficient facts to demonstrate disparate treatment, for the purposes of this Order, without having to consider the possibility that Ms. Adkins could, if she chose, make additional factual allegations to support her claim.

24

**D.     The Sufficiency of Ms. Adkins' Title VII Retaliation Pleading**

Count Four of Ms. Adkins' Complaint states that Atria retaliated against her in violation of Title VII. *Am. Compl.* at 8. In its motion to dismiss, Atria reasserts its contention that Title VII does not prohibit sexual orientation discrimination, and argues that complaining about sexual orientation discrimination is therefore not protected activity. *Def.'s Mot.* at 7.

Ms. Adkins contends that she opposed unlawful employment practices and participated in Title VII proceedings, and that she was retaliated against for this conduct. *Pl.'s Opp'n* at 7-8. In support of her retaliation claim, she offers eight factual allegations from her complaint:

(1) She reported discriminatory behavior to her supervisor and human resources;

(2) She reported to Atria's national human resources specialist her "belief that her manager was discriminating against her based on her sexual orientation and opposition to the discrimination experienced by her and the discriminatory animus to non-Caucasians";

(3) She contacted the MHRC about the possibility of filing a charge;

(4) She initiated a complaint under the MHRA;

(5) She had a conference call with the regional and national human resources representatives regarding her manager's comments about her poor job performance, and about her belief that she was being

> penalized for reporting her concerns about discrimination in the
> workplace and for being a lesbian;
>
> (6) She objected to her manager's characterization of her job
> performance and reported the situation to the national human
> resources representative;
>
> (7) She emailed the regional human resources representative explaining
> she hoped to work things out, and noted that she would be appealing
> her negative write up and was considering going forward with filing
> a state charge;
>
> (8) She filed a complaint with the MHRC alleging discrimination on the
> basis of sexual orientation and retaliation.

*Id.* at 8-9. She contends that these facts show that she "consistently opposed" Atria's conduct, and that she did not complain exclusively about sexual orientation discrimination. *Id.* at 10.

Atria maintains that the only allegation Ms. Adkins has made that could serve as protected activity is her statement that she reported to human resources that she believed her manager was discriminating against her, and that she was concerned about discrimination toward non-Caucasians. *Def.'s Reply* at 4. Atria argues that the Court should not consider any complaints regarding sexual orientation discrimination. *Id.* To the extent that Ms. Adkins' race-based complaint constitutes protected activity, Atria argues, it cannot be causally related to her termination months later. *Id.*

26

Title VII prohibits an employer from discriminating because an employee has opposed an employment practice made illegal under Title VII or "because [the employee] has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, an employee must allege facts that show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal link existed between the protected activity and the adverse job action.  *See Gerald v. Univ. of Puerto Rico*, 707 F.3d 7, 24 (1st Cir. 2013).

Here, Ms. Adkins complained to human resources about, among other things, race-based discrimination, filed a charge with the MHRC, and informed her manager of the complaint she filed with the MHRC; four days after notifying her manager of the charge, Atria terminated her employment.  *Am. Compl.* ¶¶ 37, 38.  Her MHRC charge is protected activity, *Noviello v. City of Boston*, 398 F.3d 76, 88 (1st Cir. 2005), and the parties do not dispute that the termination of her employment is an adverse job action.  Four days is sufficiently close to generate an inference that the two events were causally related.  *See Calero-Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 25-26 (1st Cir. 2004) (Finding "roughly one month" between the time plaintiff notified her employer of her EEOC complaint and her proposed suspension sufficiently close in time to establish a causal connection).  To the extent that Ms. Adkins complained about sexual orientation discrimination, it was not the only conduct she complained about.[6]  The Court need go no further; Ms. Adkins' retaliation

---

[6]     Atria argues that Ms. Adkins could not reasonably believe that she was opposing unlawful conduct because sexual orientation discrimination is not illegal under Title VII.  *Def.'s Reply* at 3.

claim survives a motion to dismiss, and the Court will allow the parties to flesh out the contents of Ms. Adkins' complaints to her manager and to human resources during discovery.

## V.     CONCLUSION

The Court GRANTS the Motion to Dismiss as to Counts One, Two, and Five. The Court DENIES the Motion to Dismiss as to Counts Three and Four.

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 1st day of July, 2015

---

However, Ms. Adkins has alleged that she complained about race-based discrimination, which Atria acknowledges qualifies as protected activity. *See id*. at 4.